Filed 6/4/25

**CERTIFIED FOR PUBLICATION**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION SEVEN

| | |
|---|---|
| THE PEOPLE, | B333606 |
| Plaintiff and Respondent, | (Los Angeles County Super. Ct. No. YA001960) |
| v. | |
| JESUS IZAGUIRRE NINO, | |
| Defendant and Appellant. | |

APPEAL from an order of the Superior Court of Los Angeles County, Hector M. Guzman, Judge.  Reversed with directions.

Jonathan E. Demson, under appointment by the Court of Appeal, for Defendant and Appellant.

Rob Bonta, Attorney General, Lance E. Winters, Chief Assistant Attorney General, Susan Sullivan Pithey, Senior Assistant Attorney General, Noah P. Hill, Supervising Deputy Attorney General, and Nima Razfar, Deputy Attorney General, for Plaintiff and Respondent.

————————————

In 1991 Jesus Izaguirre Nino pleaded guilty to the second degree murder of Fernando Avalos (Fernando) and admitted to

personally using a firearm in the commission of the murder. Nino petitioned for resentencing under Penal Code section 1172.6,[1] but the superior court denied the petition at the prima facie review stage on the basis the preliminary hearing showed Nino was the actual killer. While this appeal was pending, the Supreme Court issued its decision in *People v. Patton* (2025) 17 Cal.5th 549 (*Patton*), holding the superior court may consider preliminary hearing testimony as part of the record of conviction in determining at the prima facie review stage whether a defendant is eligible for resentencing with respect to a conviction based on a guilty or no contest plea.

It is undisputed that the preliminary hearing testimony shows Nino, acting alone, shot and killed Fernando. The Attorney General contends, as many Courts of Appeal have held, that an actual killer is ineligible for relief under section 1172.6 as a matter of law. That is true with respect to a defendant's conviction of first degree murder or attempted murder, but where an actual killer could have been convicted on the now-invalid theory of second degree felony murder, the defendant may be eligible for relief under section 1172.6. This is one of those cases.

At the time of Nino's plea in 1991, he could have been convicted of second degree felony murder based on the now-invalid imputed malice theory that he intended only to commit an inherently dangerous felony such as the grossly negligent discharge of a firearm (§ 246.3, subd. (a)). Nino contends he intended to scare Fernando, not to kill him. Nothing in the record of conviction, including the preliminary hearing transcript,

---

[1] Further statutory references are to the Penal Code.

conclusively establishes that Nino could *not* have been convicted of second degree felony murder based on imputed malice.

We therefore reverse the superior court's order denying Nino's petition for resentencing and remand with directions for the superior court to issue an order to show cause and set an evidentiary hearing under section 1172.6, subdivision (d).

## FACTUAL AND PROCEDURAL BACKGROUND

A.  *The Shooting, Information, and Plea*

According to the testimony at the preliminary hearing, on October 16, 1989 Alma Avalos (Alma), her friend Patricia Castro, and two other female friends were leaving Washington High School in Los Angeles to get lunch when Alma encountered her cousin Fernando.[2] Alma and Fernando were standing on the sidewalk talking for about five minutes, a short distance from Alma's friends, when Nino, then 17 years old, drove down the street. Nino was alone in his car. As Nino's car approached Fernando with the windows rolled down, Fernando asked Nino, "Where you from?" Nino responded, "Noventos. Nine-O. Fuck South Los." Nino was a member of the Nine-O gang, and Fernando was a member of the rival South Los gang. Nino stopped his car and raised a revolver, with the tip of the gun protruding out of the driver's side window, pointing at Fernando. Alma and Castro heard the gun "click," but it did not go off. Nino

---

[2] Alma and Castro testified at the preliminary hearing. Both were witnesses to the shooting, knew Nino, and identified him in the courtroom as the shooter. Evidence pertaining to the police and forensic investigation was admitted by stipulation; no other witnesses testified.

3

brought the gun down toward his lap, raised it a second time, and shot Fernando from a distance of about 22 feet. Fernando fell to the ground, and Nino drove off. Fernando died from a gunshot wound to the chest and abdomen. Fernando was unarmed. Although he gesticulated with his open hands during the encounter, Fernando did not raise his fists, reach into his pocket or under his shirt, or move in Nino's direction.[3]

Nino was charged in an amended information with the murder of Fernando "with malice aforethought" (§ 187, subd. (a); count 1) and dissuading a witness by force or threat (§ 136.1, subd. (c)(1); count 2). The information further alleged Nino personally used a firearm in the commission of the murder (§ 12022.5). In 1991 Nino pleaded guilty to second degree murder and admitted he personally used a firearm in the commission of the murder. The trial court sentenced Nino to 15 years to life in state prison.[4]

B.    *Nino's Petition for Resentencing*

On November 10, 2022 Nino, representing himself, filed a form petition for resentencing under section 1172.6, seeking to vacate his murder conviction on the basis he could not presently be convicted of murder under the changes made to sections 188

---

[3]    Castro testified that after Nino said "Fuck South Los," Fernando repeatedly said words to the effect of "Get out of the car" or "Come here," but Fernando did not make any threatening movements toward Nino.

[4]    The trial court sentenced Nino to 15 years to life for second degree murder (§ 190, subd. (a)) and imposed and stayed a two-year sentence on the firearm enhancement under former section 12022.5, subdivision (a).

4

and 189, effective January 1, 2019. Nino also checked the box on the form stating the information "allowed the prosecution to proceed under a theory of felony murder, murder under the natural and probable consequences doctrine or other theory under which malice is imputed to a person based solely on that person's participation in a crime." Nino attached a declaration stating that "on the day of the . . . incident which unfortunately resulted in the death of [Fernando] . . . I did not go there with any intent of 'malice aforethought' of causing harm to anyone, and much less to cause the death of Fernando or anyone else at all." (Underlining omitted.) Nino further stated that four days earlier, when he drove up to the high school, two "gunmen stepped out and walked up to the school fence with hand guns and opened fire on me and a couple of other students who[] were walking with me."

The superior court appointed counsel to represent Nino. The prosecutor filed an opposition to the petition arguing that Nino had been prosecuted as the actual killer, rendering him ineligible as a matter of law for relief under section 1172.6. The prosecutor attached the transcripts of the preliminary hearing and plea hearing and asserted the court should find Nino ineligible for relief based on readily ascertainable facts in the record leading up to Nino's guilty plea. Nino's lawyer filed a brief arguing the court could not rely on the preliminary hearing testimony at the prima facie review stage. Further, he argued, Nino "consistently maintained that he never had any intent to kill [Fernando], but rather he only wanted to warn off [Fernando] so that he would stop threatening [Nino]." The brief also asserted that Nino believed it was Fernando who had shot at him a few days before the killing. Thus, Nino could have been

convicted of second degree murder under the now-invalid natural and probable consequences doctrine "just for firing the gun." The attorney added at the prima facie review hearing that Nino could have been convicted of second degree felony murder based on an assault (shooting at Fernando to scare him).

On August 30, 2023 the superior court denied Nino's petition without issuing an order to show cause, holding Nino was ineligible for resentencing as a matter of law. The court concluded it was proper to consider the preliminary hearing transcript at the prima facie review stage and it found, based on the transcript, "this was a gang-related murder" and Nino was "prosecuted as the actual perpetrator of this crime, and therefore, 1172.6 is inapplicable to [Nino's] case."

Nino timely appealed.

## DISCUSSION

A.     *Senate Bill No. 1437 and Section 1172.6*

Senate Bill No. 1437 (2017-2018 Reg. Sess.) (Senate Bill 1437), effective as of January 1, 2019, eliminated the natural and probable consequences doctrine as a basis for finding a defendant guilty of murder and significantly limited the scope of the felony-murder rule. (*Patton, supra*, 17 Cal.5th at p. 558; *People v. Curiel* (2023) 15 Cal.5th 443, 448-449 (*Curiel*); *People v. Strong* (2022) 13 Cal.5th 698, 707-708 (*Strong*).) Section 188, subdivision (a)(3) (section 188(a)(3)), now prohibits imputing malice based solely on an individual's participation in a crime and requires proof of malice to convict a defendant of murder, except under the revised felony-murder rule as set forth in section 189, subdivision (e). (*Patton*, at p. 558; *Curiel*, at p. 448.)

6

Senate Bill No. 775 (2021-2022 Reg. Sess.), effective January 1, 2022, expanded the scope of potential relief by applying Senate Bill 1437's ameliorative changes to individuals convicted of attempted murder and voluntary manslaughter. (See § 1172.6, subd. (a).)  The legislation also extended relief to defendants convicted of murder under any "'other theory under which malice is imputed to a person based solely on that person's participation in a crime.'"  (§ 1172.6, subd. (a), as amended by Stats. 2021, ch. 551, § 2; see *People v. Antonelli* (2025) 17 Cal.5th 719, 725.)

Section 1172.6 provides a procedure for an individual convicted of felony murder, murder or attempted murder under the natural and probable consequences doctrine, or manslaughter to petition the sentencing court to vacate the conviction and be resentenced on any remaining counts if the individual could presently not be convicted of murder, attempted murder, or manslaughter because of changes to sections 188 and 189. (*Curiel, supra*, 15 Cal.5th at pp. 449-450; *Strong, supra*, 13 Cal.5th at p. 708.)

If the petition contains all the required information, including a declaration by the petitioner that he or she is eligible for relief based on the requirements of subdivision (a), the sentencing court, upon request, must appoint counsel to represent the petitioner.  (§ 1172.6, subd. (b)(3); *People v. Lewis* (2021) 11 Cal.5th 952, 962-963.)  After briefing by the parties, the court must hold a hearing to determine whether the petitioner has made a prima facie showing of entitlement to relief. (§ 1172.6, subd. (c); see *Curiel, supra*, 15 Cal.5th at p. 450.)

In deciding whether a petitioner has made a prima facie showing for relief, the sentencing court "looks beyond the face of

7

the petition" to the record of conviction, which "'necessarily inform[s] the trial court's prima facie inquiry . . . , allowing the court to distinguish petitions with potential merit from those that are clearly meritless.'" (*Patton, supra*, 17 Cal.5th at p. 563, quoting *People v. Lewis, supra*, 11 Cal.5th at p. 971.) "[T]he record of conviction the parties may consult at the prima facie stage includes a preliminary hearing transcript preceding a guilty plea." (*Patton*, at p. 568.) As the Supreme Court explained in *Patton*, the sentencing court may, "in determining at the prima facie stage whether a petitioner was convicted under a now-invalid theory, rely on unchallenged, relief-foreclosing facts within a preliminary hearing transcript." (*Id.* at p. 564.) However, "[i]n reviewing any part of the record of conviction at this preliminary juncture, a [sentencing] court should not engage in 'factfinding involving the weighing of evidence or the exercise of discretion.'" (*Lewis*, at p. 972; accord, *Patton*, at p. 567 ["should a trial court encounter a material fact dispute, the court may not resolve that dispute at the prima facie stage"].)

If the petitioner makes the requisite prima facie showing of entitlement to relief, the superior court must issue an order to show cause and hold an evidentiary hearing to determine whether to vacate the challenged conviction and resentence the petitioner on any remaining counts. (§ 1172.6, subds. (c) & (d)(1).) If, however, "the petition and record in the case establish conclusively that the defendant is ineligible for relief," the court may deny (or dismiss) the petition. (*Strong, supra*, 13 Cal.5th at p. 708; accord, *Curiel, supra*, 15 Cal.5th at p. 450; see § 1172.6, subd. (c).)

We review de novo the superior court's denial of a petition for resentencing at the prima facie review stage, including its

8

determination that the record of conviction establishes as a matter of law that the petitioner is not entitled to resentencing. (*People v. Jackson* (2025) 110 Cal.App.5th 128, 145; accord, *People v. Flores* (2023) 96 Cal.App.5th 1164, 1170.) We likewise review the interpretation of a statute de novo. (*Curiel, supra,* 15 Cal.5th at p. 461.)

B.    *The Fact Nino Was the Actual Killer Does Not Render Him Ineligible for Relief Under Section 1172.6*

The Attorney General contends that Nino, as the actual killer, is ineligible for relief under section 1172.6 as a matter of law. The evidence at the preliminary hearing showed Nino was the sole perpetrator and Fernando's actual killer. Both Alma and Castro witnessed the shooting at close range in the middle of the day and testified Nino was alone in his car when he drove up. Nino and Fernando were rival gang members, and after they challenged each other, Nino raised a revolver through the driver's side window of his car and fired a single shot (after a "click" without a discharge of the gun) at Fernando from a distance of about 22 feet, inflicting a fatal wound to the chest and abdomen. Although an actual killer in most cases is not eligible for relief under section 1172.6, the resentencing scheme does not foreclose relief for a defendant who, despite being the actual killer, could have been convicted of second degree felony murder based on a now-invalid theory of imputed malice. Nino's plea and record of conviction do not preclude the possibility he could have been convicted of second degree felony murder based on the felony offense of grossly negligent discharge of a firearm.

We start with the plain language of sections 188 and 189. As the Supreme Court explained in *Curiel, supra,* 15 Cal.5th at

9

page 461, with respect to the requirement of an intent to kill under section 1172.6, "'"""'As in any case involving statutory interpretation, our fundamental task here is to determine the Legislature's intent so as to effectuate the law's purpose. [Citation.] We begin by examining the statute's words, giving them a plain and commonsense meaning"'"" [Citation.] "'[W]e look to "the entire substance of the statute . . . in order to determine the scope and purpose of the provision . . . [Citation.]" [Citation.] That is, we construe the words in question "'in context, keeping in mind the nature and obvious purpose of the statute . . . ' [Citation.]" [Citation.] We must harmonize "the various parts of a statutory enactment . . . by considering the particular clause or section in the context of the statutory framework as a whole."'"""

Section 188(a)(3) provides with respect to the malice required for homicide: "Except as stated in subdivision (e) of Section 189, in order to be convicted of murder, a principal in a crime shall act with malice aforethought. Malice shall not be imputed to a person based solely on his or her participation in a crime." By excluding first degree felony-murder convictions falling within section 189, subdivision (e), from the imputed malice prohibition, section 188(a)(3) maintains the (narrowed) first degree felony-murder rule. Specifically, section 189, subdivision (e), provides that a defendant may be convicted of first degree felony murder if the People prove the defendant was the actual killer (§ 189, subd. (e)(1)), with the intent to kill assisted in the commission of the murder (§ 189, subd. (e)(2)), or was a major participant in an underlying felony listed in section 189, subdivision (a), and acted with reckless indifference to human life "as described in subdivision (d) of Penal Code

10

Section 190.2" (the felony-murder special-circumstance provision) (§ 189, subd. (e)(3)). (See *Strong, supra*, 13 Cal.5th at p. 708.)

But Section 188(a)(3) does not carve out any exception for second degree felony murder, which, like first degree felony murder, is based on an imputed malice theory of liability. (See *People v. Chun* (2009) 45 Cal.4th 1172, 1184 (*Chun*) [the second-degree felony-murder rule "'imputes the requisite malice for a murder conviction to those who commit a homicide during the perpetration of a felony inherently dangerous to life'"].) Accordingly, the Legislature, in excepting first degree felony-murder convictions from the imputed malice prohibition, but not second degree felony-murder convictions, eliminated second degree felony murder as a valid theory of liability, regardless of whether the defendant is an accomplice or the actual killer.

The legislative history reflects this intent. In enacting Senate Bill 1437, the Legislature acknowledged that under then-existing law a defendant who was the actual killer could be convicted as the perpetrator of second degree felony murder based on an imputed malice theory of liability. As the Committee on Public Safety explained in its April 2018 bill analysis, "[A] defendant who fires a weapon in the air to deter criminals from burglarizing their property can be convicted of second-degree felony murder if the firing of the weapon kills a human being." (Sen. Com. on Public Safety, Analysis of Sen. Bill No. 1437 (2017-2018 Reg. Sess.) as introduced Feb. 16, 2018, pp. 6-7.) Further, the committee reports analyzing the February 2018 bill stated defendants convicted of second degree felony murder could be eligible for relief: "*This bill* would provide a means of resentencing a defendant when a complaint, information, or indictment was filed against the defendant that allowed the

11

prosecution to proceed under a theory of first degree felony murder, *2nd degree felony murder*, or murder under the natural and probable consequences doctrine. . . ." (*Id.* at p. 3, italics added; accord, Assem. Com. on Public Safety, Analysis of Sen. Bill No. 1437 (2017-2018 Reg. Sess.) as amended May 25, 2018, p. 1.)

Notably, Senate Bill 1437, as introduced in February 2018, did not distinguish between first degree and second degree felony murder in creating an exception to the imputed malice prohibition in section 188(a)(3) for the actual killer. Although the original bill amended subdivision (a)(3) to state, as it does today, that "[m]alice shall not be imputed to a person based solely on his or her participation in a crime," it included the following exception: "A participant or conspirator in the commission or attempted commission of a felony inherently dangerous to human life may be imputed to have acted with implied malice *only if he or she personally committed the homicidal act.*" (Sen. Bill 1437, as introduced Feb. 16, 2018, italics omitted; see Sen. Rules Com., Off. of Sen. Floor Analyses, 3d reading analysis of Sen. Bill No. 1437 (2017-2018 Reg. Sess.) as amended May 25, 2018, p. 2 [Sen. Bill 1437 "[p]rohibits a participant in the commission or attempted commission of a felony inherently dangerous to human life to be imputed to have acted with implied malice, *unless he or she personally committed the homicidal act.*" (Italics added.)].)

An August 20, 2018 amendment to Senate Bill 1437 in the Assembly, however, deleted the broad exception in section 188(a)(3) for a participant who "personally committed the homicidal act," replacing it with what is now the first sentence of subdivision (a)(3), limiting the exception from the imputed malice prohibition to the narrowed first-degree felony murder rule in

12

section 189, subdivision (e).  (Sen. Bill 1437, as amended Aug. 20, 2018.)  The final Senate Rules Committee Office of Floor Analyses report dated August 30, 2018 (in contrast to the committee's May 2018 report) reflects this change, referring in its description of the bill only to the fact malice cannot be imputed to a person based on his or her participation in the crime, with no reference to an exception for a participant who "personally committed the homicidal act."  (Sen. Rules Com., Off. of Sen. Floor Analyses, analysis of Sen. Bill No. 1437 (2017-2018 Reg. Sess.) as amended Aug. 20, 2018, p. 4.)[5]  The only reference to the actual killer is in the report's description of section 189 with respect to liability for first degree felony murder.  (*Ibid.*)  The August 20 amendment is consistent with the Legislature's intent to eliminate murder liability based on imputed malice in all circumstances except first degree felony murder, for which an actual killer remains liable for murder based on imputed malice.

Section 189, subdivision (e), is consistent with our interpretation.  As discussed, subdivision (e)(1) provides that a defendant may be liable for murder if the defendant "was the

---

[5]      We acknowledge the August 2018 Senate Rules Committee report in a section titled "Background" includes a paragraph from the May 2018 Senate Rules Committee report that is unchanged and references the exception in the original bill for defendants who "personally committed the homicidal act."  (See Sen. Rules Com., Off. of Sen. Floor Analyses, analysis of Sen. Bill No. 1437 (2017-2018 Reg. Sess.) as amended Aug. 20, 2018, p. 7; Sen. Rules Com., Off. of Sen. Floor Analyses, 3d reading analysis of Sen. Bill No. 1437 (2017-2018 Reg. Sess.) as amended May 25, 2018, p. 6.) The inclusion of this paragraph appears to be an oversight in light of the final report's recognition in its description of the amended bill that this language had been deleted.

actual killer," but the qualification applies only to first degree felony-murder convictions—that is, those based on a "felony listed in [section 189,] subdivision (a) in which a death occurs" (§ 189, subd. (e)). The felonies listed in section 189, subdivision (a), include those that support a conviction of first degree felony murder, including arson, rape, carjacking, robbery, burglary, mayhem, kidnapping and other specified felonies, and not the grossly negligent discharge of a firearm, which at the time of Nino's plea in 1991 could have supported a second degree felony-murder conviction. As the Supreme Court explained in *Chun, supra*, 45 Cal.4th at page 1182, "[s]econd degree felony murder is 'an unlawful killing in the course of the commission of a felony that is inherently dangerous to human life but is not included among the felonies enumerated in section 189.'" Accordingly, because Nino could have been convicted under the now-invalid theory of second degree felony murder, he was potentially eligible for relief under section 1172.6. (See § 1172.6, subd. (a)(2) & (3).)

Our colleagues in Division Five of this district similarly concluded in *People v. DeHuff* (2021) 63 Cal.App.5th 428, 431, 442 that the trial court erred in denying a petition for resentencing under section 1172.6 at the prima facie review stage because the jury was instructed on two theories of liability: a still-valid theory of implied malice and a now-invalid theory of second degree felony murder based on evading an officer by driving with reckless disregard for the safety of persons or property. The defendant in *DeHuff* had been convicted of second degree murder for killing the driver of a van during a high-speed police chase in which the defendant collided with the victim's van, causing it to hit the center divider and crash. (*DeHuff*, at

14

pp. 431-432.) The court explained that under changes to section 188 barring imputation of malice based solely on the defendant's participation in a crime, the defendant "could not be convicted of second degree felony murder based on [reckless driving while evading a police pursuit] as a result of these amendments." (*DeHuff*, at p. 442.) Thus, because "there is no way to ascertain from the record upon which theory the jury based its finding of guilt," the trial court erred in ruling the defendant was ineligible for resentencing relief as a matter of law. (*Ibid.*; see *In re Ferrell* (2023) 14 Cal.5th 593, 601 [granting habeas corpus petition and vacating defendant's conviction of second degree felony murder predicated on his willful discharge of a firearm in a grossly negligent manner (which theory of liability based on an assaultive crime was eliminated in *Chun, supra*, 45 Cal.4th at p. 1200) but observing that "[m]ore recently, our Legislature has gone farther than *Chun*, saying without varnish that '[m]alice shall not be imputed to a person based solely on his or her participation in a crime,'" citing Senate Bill 1437 and section 188(a)(3)].)

The Supreme Court's analysis of Senate Bill 1437 in *People v. Gentile* (2020) 10 Cal.5th 830 is instructive. The court concluded the legislation barred convictions for second degree murder (in addition to first degree murder) under the natural and probable consequences doctrine. (*Id.* at p. 851.) The court explained, "The language of section 188(a)(3) requires a principal to 'act with malice aforethought' in order to be convicted of murder, making no exception for accomplices or second degree murder. [Citation.] By its terms, section 188(a)(3) permits a second degree murder conviction only if the prosecution can prove the defendant acted with the accompanying mental state of mind

15

of malice aforethought.  The prosecution cannot "impute[] [malice] to a person based solely on his or her participation in a crime."  (*Id*. at p. 846, citing § 188(a)(3).)  Although the defendant in *Gentile* was convicted on an accomplice theory, we see no reason why the court's analysis would not apply here:  Under section 188(a)(3), a defendant must possess malice aforethought to be convicted of second degree murder, eliminating both the natural and probable consequences doctrine and second degree felony murder, regardless of whether the defendant is the actual killer or an accomplice.

The Attorney General relies on language in the Supreme Court's decision in *Strong, supra*, 13 Cal.5th 698 to support his contention that relief under section 1172.6 is limited to accomplices.  The court in *Strong* observed, citing to the Legislature's findings, that "Senate Bill 1437 significantly limited the scope of the felony-murder rule to effectuate the Legislature's declared intent 'to ensure that murder liability is not imposed on a person who is not the actual killer, did not act with the intent to kill, or was not a major participant in the underlying felony who acted with reckless indifference to human life.'"  (*Strong*, at pp. 707-708, quoting Stats. 2018, ch. 1015, § 1, subd. (f).)  But the *Strong* court elaborated, "[S]ection 189, as amended, now limits liability under a felony-murder theory principally to 'actual killer[s]' (Pen. Code, § 189, subd. (e)(1)) and those who, 'with the intent to kill,' aid or abet 'the actual killer in the commission of murder in the first degree' (*id.*, subd. (e)(2))."  (*Strong*, at p. 708.)  Thus, the court was focused on the first degree felony-murder rule under the amendments to section 189, subdivision (e), and it had no occasion to consider the continued viability of second degree felony murder with respect to an actual killer.  Further,

16

although section 1, subdivision (f), of the legislative findings focuses on the intent to limit accomplice liability, the other findings focus on individual culpability, for example, stating in subdivision (g), "A person's culpability for murder must be premised upon that person's own actions and subjective mens rea." (Stats. 2018, ch. 1015, § 1, subd. (g).)[6]

We recognize that several Courts of Appeal have found in the context of pleas to homicide offenses that where the preliminary hearing transcript shows the defendant was the actual killer, the defendant is ineligible for relief under section 1172.6 at the prima facie review stage. (See, e.g., *People v. Muhammad* (2024) 107 Cal.App.5th 268, 273, 275, review granted Feb. 19, 2025, S288860 [explaining with respect to no contest plea to attempted murder that "[t]he amendments to the Penal Code did not invalidate murder convictions based on the theory that the defendant was the actual killer"]; *People v. Pickett* (2023) 93 Cal.App.5th 982, 990 [defendant who shot the victim did not make prima facie showing with respect to his guilty because "uncontroverted evidence from the preliminary hearing transcript show[ed] that the defendant acted alone in killing the

_____

[6]     The Attorney General's reliance on *People v. Delgadillo* (2022) 14 Cal.5th 216 is likewise misplaced. There, the Supreme Court held the defendant was not entitled to relief under section 1172.6 because "the record . . . makes clear that Delgadillo was the actual killer and the only participant in the killing." (*Delgadillo*, at p. 233.) But Delgadillo was convicted of second degree murder based on his driving while intoxicated on the wrong side of the road and killing the passenger of a car Delgadillo hit head-on, and the court made clear that Delgadillo was convicted on an "actual implied malice theory." (*Id.* at pp. 222-223.)

17

victim"].) Neither *Muhammad* nor *Pickett* addressed whether Senate Bill 1437's abrogation of second degree felony murder applied to actual killers. Although *Pickett* involved a plea to second degree murder, as the Supreme Court in *Patton* observed, "'the defendant [in *Pickett* did] not put forth, by way of briefing or oral argument, any factual or legal theory in support of his petition.'" (*Patton, supra*, 17 Cal.5th at p. 561, quoting *Pickett*, at p. 990.)[7]

Finally, we observe that in 2009 the Supreme Court in *Chun, supra*, 45 Cal.4th at page 1200 abolished liability for second-degree felony murder based on assaultive offenses (including grossly negligent discharge of a firearm), well before

_____

[7] In *People v. Mares* (2024) 99 Cal.App.5th 1158, 1161, review granted May 1, 2024, S284232, the Court of Appeal affirmed the denial at the prima facie review stage of a section 1172.6 resentencing petition with respect to the defendant's guilty plea to voluntary manslaughter on the basis the preliminary hearing transcript showed "Mares was the actual killer and acted alone in stabbing the victim." The court explained the record showed "Mares pled guilty while the People were pursuing a murder conviction based only on a theory that he was the actual killer. Nothing in the record suggests Mares could have benefitted from Senate Bill 1437's changes in the law. The changes to the law applied to accomplices. The legislature eliminated murder liability only for some convicts 'who were neither the actual killers nor intended to kill anyone.'" (*Id.* at p. 1166.) We disagree with the general statement that Senate Bill 1437 applies only to accomplices, but we note that the defendant in *Mares* in his appellate briefing focused only on whether the record showed he was the actual killer, not whether he was eligible for relief on the basis he could have been convicted of second degree felony murder. The record does not reflect that the court considered that issue.

18

section 1172.6 was enacted (but after Nino was convicted). (See *Chun*, at p. 1200 ["When the underlying felony is assaultive in nature, such as a violation of section 246 or 246.3, we now conclude that the felony merges with the homicide and cannot be the basis of a felony-murder instruction."].) However, *Chun*'s elimination of liability for some second degree felony-murder convictions does not render Nino ineligible for relief under section 1172.6. Although there are two potential bases for relief (a habeas corpus petition under *Chun* and section 1172.6), it is nonetheless true Nino could not be convicted today of second degree felony murder "because of changes to Section 188 or 189 made effective January 1, 2019." (§ 1172.6, subd. (a)(3); see *Strong, supra*, 13 Cal.5th at p. 712 ["[S]ection 1172.6, subdivision (a)(3)'s 'because of' language does not require a showing that a claim to relief under Senate Bill 1437 arises from *no other* cause—only that the 2019 changes supply a basis for the claim and so are *a* cause"]; *People v. Lee* (2023) 95 Cal.App.5th 1164, 1185 ["To deny resentencing to individuals simply because case law in the interim also has rejected imputed malice under certain theories would be contrary to the broad relief embodied in section 1172.6."]; see also *People v. Antonelli, supra*, 17 Cal.5th at pp. 730-731 [defendant convicted of provocative act murder— prior to elimination of imputed malice theory of liability by *People v. Concha* (2009) 47 Cal.4th 653—was not categorically ineligible for relief, citing language in *Strong* that § 1172.6, subd. (a)(3), only requires the 2019 changes to §§ 188 and 189 be "'*a* cause'" for eligibility].)[8]

---

[8] By contrast, the Supreme Court eliminated second degree felony murder based on felony assault with a deadly weapon in

19

Because the preliminary hearing transcript and record of conviction do not conclusively establish that Nino's "conviction was under a still-valid theory" that rendered him ineligible for relief as a matter of law, Nino made a prima facie showing of entitlement to relief. We therefore reverse the superior court's denial of Nino's petition for resentencing.

## DISPOSITION

The order denying Nino's petition for resentencing is reversed. On remand, the superior court is to issue an order to show cause and to conduct further proceedings in accordance with section 1172.6, subdivision (d).

FEUER, J.

We concur:

MARTINEZ, P. J.          SEGAL, J.

1969, more than 20 years before Nino's plea. (See *People v. Ireland* (1969) 70 Cal.2d 522, 539 ["To allow such use of the felony-murder rule [based on felony assault with a deadly weapon] would effectively preclude the jury from considering the issue of malice aforethought in all cases wherein homicide has been committed as a result of a felonious assault—a category which includes the great majority of all homicides."].) Accordingly, Nino would not be eligible for relief under section 1172.6 on this theory.